KATHLEEN JULIE O'CONNOR, AN INFANT BY HER GUARDIAN *AD LITEM*, MARY JOAN O'CONNOR; AND ROGER O'CONNOR, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS, v. ABRAHAM ALTUS AND HARRISON PARK, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Argued December 19, 1973—Decided March 11, 1975.

108

*Mr. Peter G. Wegener* argued the cause for plaintiffs-appellants and cross-respondents (*Messrs. Bathgate, Wegener & Sacks,* attorneys).

*Mr. Herbert C. Klein* argued the cause for defendants-respondents and cross-appellants (*Messrs. Krieger and Klein,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J. Harrison Park Apartments is a high-rise apartment building located at 377 Harrison Street, East Orange. On September 13, 1967, the infant plaintiff, Kathleen Julie O'Connor, was on the premises visiting her friend Renee Sliby who resided there. They were on their way to the rear of the apartment building when the accident occurred.

Leading to the patio or playground area in the rear were two sets of glass doors, separated by a brick partition. A glass sidelight of the same height and virtually the same width as the door flanked each glass door. The sidelights contained quarter-inch ordinary plate glass with no decals or markings thereon. The infant plaintiff walked or ran through one of the sidelights, it appearing to her to be an open door. The accident resulted in her being hospitalized for two operations. Numerous scars and some functional impairment of her legs are among the claimed residual damages.

On January 20, 1969, Julie and her father instituted this suit[1] to recover for personal injuries and consequential damages. Harrison Park, Inc., the owner of the property when the building was constructed, and Abraham Altus, the record owner of the property at the time of the accident, were both named as defendants.[2] The theory of the corporate defendant's liability is found in these factual and legal contentions of plaintiffs, set forth in the pretrial order:

[1]At oral argument before us plaintiffs' counsel was uncertain of the date upon which the complaint had been filed. His brief indicates that date to be January 20, 1968, but the records of the clerk of the Superior Court confirm the accurate date as January 20, 1969. This is consistent with the docket number in that court.

[2]Other defendants named by plaintiffs were the manufacturer of the glass in the doors and sidelights, the supplier and installer of the glass, and the architect who designed the doors and sidelights. They were all relieved of liability either at trial or by judgment *n.o.v.*, 123 *N. J. Super.* 379, 383 (App. Div. 1973). None of these defendants is party to this appeal.

As to the defendant Harrison Park, Inc., plaintiff contends that it was the builder and principal contractor of Harrison Park Apartments, negligent in the construction and maintenance of the doorway and side light in question and responsible as a general contractor for the construction of the glass panels which appear to be open areas of the doors with aluminum frames that can easily be mistaken as doors but fail to conform with proper construction and maintenance procedure and general safety requirements in that clear glass panels should be marked with a decorative design or decals and the glass should have been the safety type.

Plaintiffs' complaint charges defendant Altus, the owner at the time of the accident, with having "negligently, carelessly and recklessly failed to properly control, care for, operate and maintain the aforesaid premises." There is no claim that Altus had any ownership interest at the time of construction or that he was in any way connected with the premises prior to or for some considerable time after the completion of the building. The record before us and the representations of counsel clearly indicate Altus' role is not other than record owner at the time of this occurrence. Defendant Altus did not answer and default was entered against him.

The jury returned verdicts of $100,000 in favor of the infant plaintiff and $3,000 in favor of her father against Harrison Park, Inc. After trial the judge vacated the default as to Altus and struck the attempted service of process upon him. On the appeal of Harrison Park, Inc., from the judgment entered upon the jury verdicts and plaintiffs' cross-appeal from the trial court's action in vacating the default and striking service of process, the Appellate Division (a) reversed the judgment in favor of plaintiffs because of asserted error in the jury charge and remanded the case for a new trial on all issues as to Harrison Park, Inc., 123 *N. J. Super.* 379, 385 (App. Div. 1973) ; (b) affirmed the trial court's order setting aside the default as to Altus but provided that the remand for a new trial would include plaintiffs' claim against Altus, inasmuch as Altus' counsel

informed the court he was "authorized to acknowledge service for him and he will do so." *Id.* at 387.

Our grant of plaintiffs' petition for certification, 64 *N. J.* 152 (1973), and defendants' cross-petition for certification, 64 *N. J.* 153 (1973), presents for review the propriety of these determinations. Also considered are the impact of *N. J. S. A.* 2A:14–1.1 dealing with the unsafe condition of improvements to real property; the interaction of the ten-year provision of that statute with the personal injury statute of limitations, *N. J. S. A.* 2A:14–2, and with the tolling statute, *N. J. S. A.* 2A:14–21; and the rulings by the courts below on the testimony of a treating psychiatrist.

I

The precise role and participation of Harrison Park, Inc., in the construction of the apartment building is less than clear. It is undisputed that the corporation was the owner of the fee during the period of construction and that it engaged the services of the architect who drew the plans. However, David Shuldiner, an officer of the corporation which installed the glass, testified that the name Harrison Park Construction Co., Inc., apeared on the contract with his firm.[3] The record does not reveal which entity hired the other subcontractors for the construction.

Thus, we cannot say with any certainty whether Harrison Park, Inc., was merely the owner of the land or whether

---

[3]At trial counsel for the plaintiffs asserted that his search of the corporate record did not reveal the existence of such a corporation. In his Appellate Division brief he argued, contrary to the contentions recited *ante* from the pretrial order, that Harrison Park, Inc., is a mere owner of the property. Then at oral argument before us he strenuously urged that Harrison Park, Inc., is an owner-builder on the liability issue and that it is a mere owner on the limitation issue. At oral argument counsel for defendant Harrison Park, Inc., maintained that Harrison Park Construction Co., Inc., was in fact a separate legal entity which had served as general contractor for the construction of the apartment building.

it was, at least to some degree, the owner-builder. However, under either view of its role it seems clear that plaintiffs' action against that defendant has been brought too late.

First, we analyze the corporate defendant's position as mere owner. Under either the traditional view of a vendor's liability, see *Sarnicandro v. Lake Developers, Inc.,* 55 *N. J. Super.* 475 (App. Div. 1959); *Restatement (Second) of Torts,* §§ 353, 373 (1965), or the more liberal view of liability urged by plaintiffs, see *Hut v. Antonio v. Guth,* 95 *N. J. Super.* 62 (Law Div. 1967)[4], any liability for physical harm caused by a natural or artificial condition, of which the vendor has actual or constructive notice, involving unreasonable risk to persons on or off the land continues only until the vendee has had a reasonable opportunity to discover the condition and take appropriate precautions. See *Prosser, Law of Torts* § 64 (4th ed. 1971); Annotation, "Liability of Vendor or Grantor of Real Estate for Personal Injury to Purchaser or Third Person Due to Defective Condition of Premises," 48 *A. L. R.* 3d 1027 (1973).

Harrison Park, Inc., conveyed title to the property to Harrison Associates, a limited partnership, on October 1, 1958, and the accident occurred on September 13, 1967. (In the meantime Harrison Associates had conveyed legal title to defendant Altus.) It is apparent that nine years is much

---

[4]*Hut* accurately states the general rule of law applicable to a seller of realty, 95 *N. J. Super.* at 66, to the effect that the vendor is "not liable for injury by a buyer in possession, or to any third party, which is caused by a dangerous condition on the premises, whether natural or artificial, which existed when the buyer took possession," citing *Sarnicandro.* It then goes on to list the recognized exceptions to this rule and includes among them the following: "if the seller *created* the dangerous condition and conveyed [the premises] in that condition." *Id.* There is no direct authority for this broadly stated exception in either our own case law or the *Restatement (Second) of Torts* (1965). Our disposition of the issue before us makes unnecessary any statement of position on this asserted exception to the general rule, and our reference to *Hut* implies no such position.

more than a reasonable time for the vendee and his successor to have discovered and cured any such unsafe conditions, of which the vendor had knowledge, as are alleged in this case. See *Cavanaugh v. Pappas,* 91 *N. J. Super.* 597, 605 (Cty. Ct. 1966) (five days not unreasonable); *Hut v. Antonio v. Guth, supra,* 95 *N. J. Super.* at 67 (almost four years an unreasonable period); *Narsh v. Zirbser Brothers, Inc.,* 111 *N. J. Super.* 203, 216–217 (App. Div. 1970) (eleven months an unreasonable period). See also *Restatement (Second) of Torts* § 353, Comment g (1965). Therefore, if the corporate defendant be simply an owner, there is no liability to plaintiffs under the circumstances as a matter of law, and the Appellate Division was in error in remanding for "one or more factual determinations," 123 *N. J. Super.* at 385.

On the other hand, if Harrison Park, Inc., is deemed a builder-vendor, *N. J. S. A.* 2A:14–1.1 comes into play and, says the corporate defendant, operates to bar this action against it. That statute reads as follows:

> No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought. *L.* 1967, *c.* 59, § 1, eff. May 18, 1967.

Preliminarily we observe that defendant Harrison Park, Inc., did not raise the defense of this statute in its answer to the complaint or in its pretrial contentions. Therefore, argue plaintiffs, whatever defense might otherwise be

afforded by that enactment should be deemed waived, it being a statute of limitations and thus required by *R*. 4:5–4 to be pleaded. Plaintiffs recognize, however, the rule of *Rappeport v. Flitcroft*, 90 *N. J. Super.* 578 (App. Div. 1966), which preserves the defense of statute of limitations, at least for purposes of a motion before the trial, where the answering pleading recites the complaint's "failure to state a claim upon which relief can be granted," 90 *N. J. Super.* at 580–81; see *R*. 4:6–2. By its answer herein defendant Harrison Park, Inc., undertook to reserve the right "to move to dismiss the Complaint filed in the within cause at any time prior to, at, or during the trial of the within cause, on the ground that plaintiffs have no legal cause of action against the defendant hereunder," that ground being substantially the same as "failure to state a claim upon which relief may be granted."

The question then becomes whether under the circumstances of this case Harrison Park, Inc., may avail itself of the protection afforded by *N. J. S. A*. 2A:14–1.1. We hold the defense available and, as will develop, a bar to plaintiffs' claims.

While it was not until the conclusion of plaintiffs' case that Harrison Park, Inc., raised the issue of the statute's applicability to it, plaintiffs were aware that the issue of the statute was in the case. It had been pleaded by the defendant architect and raised by him both in the pretrial order and by way of pretrial motion. It was the basis upon which the trial judge exculpated the architect by an order for judgment *n.o.v.* The construction to be given the statute under the facts herein was fully argued, albeit on shifting foundations because of the parties' inability to approach the status of Harrison Park, Inc., with any consistency. Given the unusual situation before us, we conclude the interests of justice will best be served by permitting the defense of the statute to be asserted by the corporate defendant, see *R*. 1:1–2; but we add the cautionary note that under different

circumstances a like departure from the procedure set forth in our Rules may not be condoned.

Turning now to the proper interpretation of the statute, we note that in *Rosenberg v. Town of North Bergen,* 61 *N. J.* 190 (1972), Justice Mountain, writing for this Court, upheld *N. J. S. A.* 2A:14–1.1 against various constitutional attacks and discussed its parameters. In *Rosenberg,* plaintiff sustained injuries when her heel caught in the fissure between the concrete lanes of Bergenline Avenue in North Bergen. Among the defendants she named were the company which had done the paving work 33 years earlier and its successor in interest. The Appellate Division held that a road or highway was not "an improvement to real property" within the meaning of the statute and refused to bar plaintiff's cause of action. 115 *N. J. Super.* 322, 325 (App. Div. 1971).

In reversing the Appellate Division the Court noted that two recent developments in the law were the probable motivation for the legislature in passing the statute. An ordinary statute of limitations requires that a complaint be filed within a certain period of time after the cause of action accrues. However, in some negligence cases a cause of action had accrued and the period of the statute had run before the victim became at all aware of the negligence and the damages. Under the new "discovery" rule the statute of limitations has been held not to commence running until the victim discovers, or should have discovered, the wrong had been inflicted. See *Fernandi v. Strully,* 35 *N. J.* 434 (1961); *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419 (1968); *Diamond v. N. J. Bell Telephone Co.,* 51 *N. J.* 594 (1968). See also *Yerzy v. Levine,* 57 *N. J.* 234 (1970), aff'g 108 *N. J. Super.* 222 (App. Div. 1970); *Federal Insurance Co. v. Hausler,* 108 *N. J. Super.* 421 (App. Div. 1970).

Another development apparently influencing the legislature was the demise of the "completed and accepted" rule. Under this former rule the liability of a contractor or archi-

tect for negligent planning or construction terminated, as a matter of law, upon the work being completed and accepted by the owner or employer. In *Totten v. Gruzen,* 52 *N. J.* 202 (1968), this Court formally repudiated the "completed and accepted" rule and subjected builders and contractors to ordinary negligence principles. While *N. J. S. A.* 2A:14–1.1 was enacted prior to *Totten,* it was noted in *Rosenberg* that the tendency away from the "completed and accepted" rule was so clearly established as to make it reasonable to assume that the legislature took that trend into account in enacting the statute. *Rosenberg v. Town of North Bergen, supra,* 61 *N. J.* at 197 n. 2.

Justice Mountain reasoned in *Rosenberg* that the common result of these developments was to enlarge appreciably the potential liability of architects, building contractors and the like. He concluded that "these statutes are a legislative response seeking to delimit this greatly increased exposure." 61 *N. J.* at 194. Consequently, *N. J. S. A.* 2A:14–1.1 was held to apply to "all who can, by a sensible reading of the words of the act, be brought within its ambit," including defendants in that case. *Id.* at 198. The argument that this is a constitutionally prohibited "special law" was rejected, the favored class being much larger than simply architects and building contractors. *Id.* at 201.

The statute, then, is broad and offers wide-ranging protection, especially to those whose potential liabilty has been increased by the two recent developments referred to above. An owner who has some additional role in the construction certainly would have increased liability because of the "discovery rule." On the other hand, the demise of the "completed and accepted" rule, while it clearly affected the contractor or architect or one similarly proceeding under a construction contract, did not ordinarily increase the liability of a builder-vendor.

However, the liability of that class was affected by another judicial development which elucidates the legislative intent

as to the builder-vendor, not at issue in *Rosenberg*. In *Schipper v. Levitt & Sons, Inc.*, 44 *N. J.* 70 (1965), this Court held that a mass developer of houses could be held liable in negligence and in strict liability for injuries to a third party caused by a defect in the plumbing system of the house. The developer in that case served as architect, builder and vendor of the structure. In *Totten v. Gruzen, supra,* 52 *N. J.* at 210, it was held that the result in *Schipper,* at least as to negligence, was not dependent on the mass development nature of defendant's business. The negligence principles adopted in *Schipper* were held applicable to all builders and contractors.

■ It therefore seems clear that the increased potential liability which *Schipper* meant for builder-vendors must have been in the minds of the legislature when they passed this statute, *N. J. S. A.* 2A:14–1.1, two years after that case. Consequently, we conclude (contrary to the holding of both the trial court and the Appellate Division, 123 *N. J. Super.* at 387) that owners-builders are within the class which the legislature intended to protect and the statute applies to them. Reason supports the same result. It would be anomalous to say that a general contractor is protected by the statute but that an owner of land who performs some or all of the functions of a general contractor is not entitled to the same protection.

■ ■ There was testimony that the glass was installed in the building in 1956 or 1957 and the plaintiffs conceded at oral argument that the building was completed when it was sold in 1958. The complaint was not filed until 1969; therefore, more than ten years elapsed from the completion of construction to the time of filing the complaint. It thus appears that if Harrison Park, Inc., be viewed as owner-builder, plaintiffs' suit is barred by *N. J. S. A.* 2A:14–1.1.[5]

---

[5]In dealing with two of the motions below two of the judges incorrectly computed the running of time from construction to the time of the accident. The statute requires that the complaint be filed

## II

But there is an additional facet to the problem, adverted to below but not raised or argued on appeal, which is nevertheless deserving of comment here, both for proper resolution of this case and for guidance of the bench and bar; and that is the interplay of this statute with *N. J. S. A.* 2A: 14–2 (the two-year statute of limitations on actions for negligently caused personal injuries), with *N. J. S. A.* 2A: 14–21 (tolling the personal injury statute of limitations during infancy), and with *N. J. S. A.* 2A:14–2.1 (permitting a parent's claim for damages on account of an infant's negligently caused injuries to be asserted within the same time as the infant's claim). That issue is present because of the timetable in this case: the building was completed on October 1, 1958; the accident occurred on September 13, 1967; and this suit was instituted on January 20, 1969 — within two years of the accident but more than ten years after construction. This being an action for personal injuries to an infant based on negligence, customarily plaintiffs' causes of action would have to be asserted within two years of Kathleen's becoming twenty-one[6] on September 29, 1972, or by September 29, 1974. The question here, however, is whether the ten-year period after construction is to be "expanded" by reason of plaintiff's infancy. Or, put differently, where the time limitations for starting suit, contained in the respective statutes, cannot be reconciled in the factual situation here presented, can the statutes be harmonized so that one is not given precedence at the expense of the other being completely ignored?

We approach the resolution by first analyzing the problem as it might affect an adult, before confronting the compli-

within ten years after the completion of the work done. See *Richards v. Union Bldg. & Constr. Corp.*, 130 *N. J. Super.* 127, 130 (App. Div. 1974).

[6]For causes of action arising after January 1, 1973, the critical age is now 18 by virtue of *N. J. S. A.* 9:17B–1 *et seq.*

cating feature of the tolling statute on account of infancy. This in turn requires us to determine the intention of the legislature in enacting *N. J. S. A.* 2A:14–1.1. The legislative history, accurately described as "meager and unrevealing" by Justice Mountain in *Rosenberg, supra,* 61 *N. J.* at 194, is of little assistance; but in addition to the reasons alluded to heretofore — ·based on recent developments in our law — for conferring protection upon a particular class, the following are frequently advanced in support of statutes such as *N. J. S. A.* 2A:14–1.1:

1. Potential liability throughout professional life, vulnerability to tenuous claims, defense expense, and onerous record keeping reflect the need for some limitation of liability.

2. Passage of time severely handicaps the defense of an action. Even aside from the obstacles of faded memories, unavailable witnesses and lost evidence, problems of proof are extremely complex not only because of the joint effort involved in initial construction, but also due to any inadequate maintenance, improper use, or improvements and services that may follow. The architect and builder have no control over the owner, whose negligence may be the real cause of dangerous conditions.

3. The injured party retains his remedy against the owners after the statutory period. With the passage of time, the probability increases that improper maintenance, rather than faulty design or construction, is the proximate cause of injury. Thus, some reasonable time limitation for suit is a fair compromise, and statistical data show that 84.3 percent of all claims against architects and builders would be brought within four years.

> [Comment, "Limitation of Action Statutes for Architects and Builders — Blueprint for Non-action," 18 *Cath. U. L. Rev.* 361, 384 (1969) (footnotes omitted).]

With the above backdrop it is safe to assert that our statute is not at all a typical statute of limitations, for the time within which suit may be brought commences with the completion of services and construction and is thus "entirely unrelated to the accrual of any cause of action." *Rosenberg, supra,* 61 *N. J.* at 199. See Comment, *supra* at 374–75. *N. J. S. A.* 2A:14–1.1 is a special statutory limitation or "hybrid." On the one hand, it bars a right of action

from coming into existence if the accident occurs subsequent to the ten-year period; but as to those events happening before the statutory period has run, the provision disallows, like any other statute of limitations, the institution of suit after the prescribed ten years has expired.

As do many of its counterparts in other states, *N. J. S. A.* 2A:14–1.1 impliedly incorporates the tort limitation act generally applying to all personal injury actions. See Comment, *supra* at 385–86. Hence, this state's two-year statute of limitations, *N. J. S. A.* 2A:14–2, does operate to restrict the period in which actions can be initiated for accidents occurring within ten years after construction; but it does not serve to extend beyond ten years from the date construction was completed the time within which suit may be filed.

For example, an action for personal injuries sustained by an adult in an accident occurring, say, five years after the completion of construction still must be brought within two years thereafter—or seven years after construction. This statute does not preserve the remedy, in that instance, for an additional five years or until the full ten years from construction has elapsed. As indicated, both the two-year and ten-year statutes are at work in that situation. The latter does not expand the two-year period of the personal injury statute. It simply provides that in any event the suit must be started within ten years of the construction, regardless of when the cause of action accrues. The two-year period of *N. J. S. A.* 2A:14–2 controls to the extent that it "fits" within the ten years. So, with any injury to an adult occurring after the eighth year following construction, the action must be brought within whatever part of the ten-year span remains even though it is necessarily less than two years. In that circumstance the two-year period is "compressed" into some shorter period by operation of the ten-year statute. *But cf.* Comment, *supra* at 372. Had the legislature intended otherwise, it would likely have referred to an accident or accrual

of a cause of action within ten years of construction rather than prohibiting the bringing of suit beyond that time. We conclude the purpose of *N. J. S. A.* 2A:14–1.1 is to cut off all claims of the sort referred to in the statute at the end of ten years from completion of the work.

This analysis gives primacy to the ten-year ·statute. When we consider the effect of *N. J. S. A.* 2A:14–21, the tolling statute, the result is the same because the same basic policy reasons, already alluded to, are implicated. From this it follows that in our view the legislature did not intend the ten-year period after construction to be "expanded" by reason of one's infancy. This is not to say that the tolling statute is to be disregarded entirely. Rather, it seems reasonable — and serves the salutary purpose of harmonizing the statutes under examination — to conclude that the tolling statute will safeguard a remedy for a cause of action of the type affected by *N. J. S. A.* 2A:14–1.1 accruing during infancy, but only to the extent that the period within which suit must be brought against one included in the favored class does not extend beyond ten years after completion of construction. *N. J. S. A.* 2A:14–21 and *N. J. S. A.* 2A:14–2.1 thus do not preserve the remedy for the plaintiffs' causes of action under the facts of this case beyond October 1, 1968, and accordingly their claims against Harrison Park, Inc., as builder-owner are barred.

This interpretation of the statute does not leave these plaintiffs, or indeed any plaintiffs affected by *N. J. S. A.* 2A:14–1.1, without any remedy. Their rights remain effective against defendants who might be looked upon as primary — those who own, lease, occupy or control the premises. Thus, in one sense the limitation imposed by *N. J. S. A.* 2A:14–1.1 may be said to have a less "harsh" effect than the standard "accrual" limitation which normally works to bar action against all defendants and leaves an injured plaintiff entirely without remedy.

### III

Because no responsive pleading was filed on behalf of dedefendant Altus, default was entered as to him on plaintiffs' request and upon the filing of a supporting affidavit, *R.* 4:43–1. Shortly after trial plaintiffs moved to enter default judgment under *R.* 4:43–2, and the attorney for defendant Harrison Park, Inc., now appeared for Altus and countered with a motion to quash the service of the summons and complaint and to vacate the default. The trial court denied plaintiffs' application to enter judgment against Altus and set aside the default on the ground service of process was inadequate. The Appellate Division gave its approval to this ruling, 123 *N. J. Super.* at 387.

The motions were supported on both sides by affidavits revealing a state of uncertainty and confusion unfortunately characteristic, as we have already observed, of much of the case. Briefly, the papers reveal that plaintiffs' attorney determined the record owner of the premises on the date of the accident was Abraham Altus, by virtue of a deed from Harrison Associates dated March 10, 1964; that the proof of service of suit papers, executed by a special deputy sheriff, showed service on Altus by leaving a copy of the summons and complaint with "Mrs. E. Korman, authorized to accept service;" that Murray Korman was the building manager and resided on the premises, and that Elaine Korman was a competent member of Murray Korman's family; and that the suit papers were sent to the insurance carrier which covered the premises as of the date of the accident. Murray Korman told the carrier that he did not know Altus, that Altus was not a partner in the group which had equitable ownership in the apartment buildings, and that Altus' "sole connection with this property was that he was the prior owner." Clearly this last was not correct; but on the strength of that information, seemingly consistent with the fact that the named insured under the insurance company's policy was the partnership and the interest of Altus was nowhere ex-

posed, the claims supervisor instructed the carrier's counsel not to defend Altus. In fact it was not until the plaintiffs' motion for default judgment was served after trial that the insurance company learned from the broker who had written the policy that Altus, although not a member of the partnership and having no equitable interest in the property, held title as nominee for the partnership. It was the broker's position that "as such it was intended that Mr. Altus be covered under the policy." Thereupon (this, we repeat, being after the trial) the company concluded Altus should be accorded coverage under the policy. For his part Altus says he never knew any action was pending until after the notice of motion to enter default judgment had been served.

There is one other dimension to this problem worthy of mention before we turn to our resolution thereof, and it is this: as the trial was about to start, plaintiffs' attorney expressed some concern about whether or not he had the proper defendant in court. Immediately prior to the selection of a jury he moved to amend the complaint to include the partnership "as the insured, I believe of Kreiger and Klein, as the owner and in control of certain property known as 377 South Harrison Street at the time of the accident," without however abandoning any claim against Harrison Park, Inc. The defense attorney agreed that he would represent either the partnership as equitable owner of the building at the time of the accident (and for that purpose consent to this eleventh-hour application to amend the complaint) or the corporation as owner at the time of construction, but he would not represent both. Plaintiffs' attorney elected to proceed against Harrison Park, Inc.

Projected against that background is the question, first, of propriety of service of the summons and complaint upon Altus. The Appellate Division held, as did the trial court, that service was not in accordance with *R.* 4:4–4(a) and *R.* 4:4–4(d)(2). 123 *N. J. Super.* at 387.

Pertinent portions of the Rule read as follows:

*R.* 4:4–4. *Summons*: *Personal Service; In Personam Jurisdiction* Service of summons, writs and complaints shall be made as follows: (a) *Individuals Generally.*

Upon an individual other than an infant under 14 years of age or an incompetent person, by delivering a copy of the summons and complaint to him personally; or by leaving a copy thereof at his dwelling house or usual place of abode with a competent member of his household of the age of 14 years or over then residing therein * * *.

(d) *Individuals Doing Business or Having Interest in Real Property.*

\* \* \* \* \* \* \* \*

(2) *Persons Having an Interest in Real Property.*

Upon an individual owning or having an interest in real property in this State in an action arising out of such ownership or interest, by serving, in the manner prescribed in paragraph (a), the individual, or a managing or general agent of the individual employed in the management of such real property.

Both courts below reached their common conclusion of inadequate service largely on the authority of *X–L Liquors, Inc. v. Taylor,* 29 *N. J. Super.* 486 (App. Div. 1954). In that case service on an out-of-state partnership was attempted by serving the wife of its registered agent at their home. The Appellate Division held this was insufficient to meet the requirements of *R. R.* 4:4–4 and that service was thus invalid. In later proceedings in this Court it was assumed, without being decided, that this ruling was correct. *X–L Liquors, Inc. v. Taylor,* 17 *N. J.* 444, 453 (1955).

 At the outset it should be noted that in *Mullane v. Central Hanover Bank & Trust Co.,* 339 *U. S.* 306, 314, 70 S. Ct. 652, 657, 94 *L. Ed.* 865, 873 (1950), Justice Jackson spelled out the only constitutional requirements of service of process. He stated for the Court:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

See *Walker v. City of Hutchinson,* 352 *U. S.* 112, 115–16, 77 S. Ct. 200, 202, 1 *L. Ed.* 2d 178, 182 (1956); *Schroeder v. New York,* 371 *U. S.* 208, 211–12, 83 S. Ct. 279, 281–82, 9 *L. Ed.* 2d 255, 258–59 (1962); *Feuchtbaum v. Constantini,* 59 *N. J.* 167, 175 (1971); *Muntz v. Smaily,* 118 *N. J. Super.* 80, 83–84 (App. Div. 1972). Within that constitutional limitation, it is clear that states have the right to forge whatever service of process rules they see fit.

In *Koninklijke Luchtvaart Maatschappij N. V. v. Curtiss-Wright Corp.,* 17 *F. R. D.* 49 (S. D. N. Y. 1955), cited by this Court in *X–L Liquors, supra,* 17 *N. J.* at 453, as representing an approach to the service of process issue contrary to the one taken by the Appellate Division in that case, service was upheld under *Fed. R. Civ. P.* 4(d)(3).[7] There the federal marshal gave the papers to the secretary of a corporate officer, who carried them into his office. The court stated:

> Rule 4(d)(3) does not require that the delivery of process be accomplished during a face to face meeting with the person upon whom service is to be effected. Nor does it require that it be surrounded by medieval formalism. Where the Marshal acts in a manner similar to that adopted in this case which he can reasonably expect will result in delivery of the process to a person described in Rule 4(d)(3); and where his acts are effective in achieving delivery of the process to such a person, thereby giving the defendant notice that an action has been commenced against it; the service is sufficient. [17 *F. R. D.* at 51 (citations omitted).]

The court concluded that to allow defendant to prevail would be to countenance evasion of process and contravene the intent of the Rules to hold technicalities to a minimum and decide cases on the merits. See also *McCarthy v. Langston,*

---

[7] Rule 4(d)(3) provides for service in the following manner:
(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *.

23 *F. R. D.* 249 (N. D. Fla. 1959) (service on wife of corporate agent at their home upheld where agent received actual notice).

In *American Football League v. National Football League,* 27 *F. R. D.* 264 (D. Md. 1961), service under *Fed. R. Civ. P.* 4(d(3) was upheld where delivery was made to the head coaches of two professional football teams. This case lays down a two-pronged test that the representative should be so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service. *Id.* at 269. See *Montclair Electronics, Inc. v. Electra/Midland Corp.,* 326 *F. Supp.* 839 (S. D. N. Y. 1971) ; *Car-Freshner Corp. v. Broadway Manufacturing Co.,* 337 *F. Supp.* 618 (S. D. N. Y. 1971). See also *Manchester Modes, Inc. v. Lilli Ann Corp.,* 306 *F. Supp.* 622 (S. D. N. Y. 1969) (service on agent in charge of defendant's New York showroom upheld) ; *Van Hoven Company v. Stans,* 319 *F. Supp.* 180 (D. Minn. 1970) (service upheld where bookkeeper told marshal he was the office manager).

In light of all the foregoing the service of process herein on the receptionist of the managing agent met the criteria of *Mullane, supra,* and was sufficient under our *R.* 4:4–4(d)(2). To the extent that the Appellate Division decision in *X–L Liquors Inc. v. Taylor, supra,* stands for a contrary conclusion, it is in error and is overruled. The receptionist was sufficiently integrated with the small organization which had the equitable interest in the premises and had set up the "straw man," Altus, to know what to do with the papers and it was reasonable for the deputy sheriff to assume she had authority to receive service. Indeed, the papers were forwarded to the proper insurance company as a matter of course. The failure to answer the complaint ensued.

That brings us to the question of whether, given valid service upon and proper entry of default as to Altus,

the default should nevertheless have been vacated. We need make no further detailed reference to the strange and complex attendant circumstances surrounding the issues of service, coverage, representation, and theories of liability, except to point out that when taken with whatever unfounded reliance may have been placed on the Appellate Division decision in *X–L Liquors, supra,* the presence of a meritorious defense worthy of judicial determination (certainly the owner's freedom from negligence and the infant plaintiff's contributory negligence, while perhaps tenuous on the record before us, are at least arguable), the trial court's error on the issue of damages (as to which see Point IV, *post*), and the absence of any contumacious conduct on the part of Altus, the circumstances are sufficient to constitute "good cause" within the contemplation of *R.* 4:43–3 and to justify the setting aside of the default and to warrant the case against him being tried on the merits. Compare the more stringent requirements of *R.* 4:50–1 for setting aside a default judgment, and see, *e. g., Douglas v. Harris,* 35 *N. J.* 270 (1961); *Reilly v. Perehinys,* 33 *N. J. Super.* 69 (App. Div. 1954); *Fox v. Fox,* 76 *N. J. Super.* 600 (Ch. 1962); and *Perry v. Crunden,* 79 *N. J. Super.* 285 (Cty. Ct. 1963). See also *Elias v. Pitucci,* 13 *F. R. D.* 13 (E. D. Pa. 1952) (good cause under *Fed. R. Civ. P.* 55(c) requires the exercise of sound discretion by the court in light of the facts and circumstances of the particular case); 6 *J. Moore, Federal Practice,* ¶ 55.10 (2d ed. 1972) (distinguishing between relief from a default and relief from a judgment by default under the Federal Rules of Civil Procedure).

## IV

On behalf of the infant plaintiff there was presented a claim for psychiatric injury. The Appellate Division opinion discusses, in 123 *N. J. Super.* at 386–87, the issue which arose when the trial court permitted plaintiff's psychiatrist, Dr. Lyons, to be called as a witness despite failure to have

submitted a copy of any report to defense counsel. We need not repeat the facts, adequately recited in the opinion below, and we adopt the reasoning employed and the result reached there ("* * * the procedure adopted by the court was prejudicial * * *."). We would add only that under the circumstances the physician should not have been permitted to testify in the first instance. Inasmuch as Dr. Lyons is now deceased, the problem cannot arise in the same fashion on the retrial; and plaintiffs' attorney has indicated an intention to have the infant plaintiff examined by another psychiatrist, to amend answers to interrogatories, to submit a copy of the psychiatric report to defendant, and to afford defendant an opportunity for a psychiatric examination prior to any retrial.

## V

The judgment of the Appellate Division remanding the case for a new trial on all issues as to defendant Harrison Park, Inc., is modified, and the cause remanded for entry of judgment in favor of that defendant. No costs.

The judgment of the Appellate Division affirming the setting aside of a default as to Altus is, for the reasons set forth herein, affirmed. After the decision of the Appellate Division, the case went to pretrial conference while the petition for certification was pending in this Court, and the pretrial order fully sets forth the respective positions of the parties. The cause is thus ready for trial, subject to the psychiatric examinations referred to above, and is hereby remanded for that purpose on all issues as to defendant Altus. Costs to abide the event.

PASHMAN, J. (concurring and dissenting). This matter involves a number of complex procedural issues. I differ with the majority on only one of those issues — the relationship between *N. J. S. A.* 2A:14–1.1, the ten-year statute of

limitations, and *N. J. S. A.* 2A:14–21, the provision tolling statutes of limitations for infants and incompetents.

The pertinent statutes are as follows:

*N. J. S. A.* 2A:14–1.1

No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

### *N. J. S. A.* 2A:14–21

If any person entitled to any of the actions or proceedings specified in sections 2A:14–1 to 2A:14–8 or sections 2A:14–16 to 2A:14–20 of this title or to a right or title of entry under section 2A:14–6 of this title is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind.

*N. J. S. A.* 2A:14–21 as it applies to infants is substantially identical to the English statute of 21 *Jac.* 1, c. 16, enacted in 1623. That statute was declared in force in the province of New Jersey in 1728 and re-enacted by the State Legislature in 1799. *Paterson's Laws,* p. 353 (1799). *Smith v. Felter,* 61 *N. J. L.* 102, 105 (Supreme Court 1897); *cf. Valente v. Boggiano,* 107 *N. J. L.* 456, 458–59 (E. & A. 1931). Hence there is no useful legislative history to guide the judiciary in its construction. Nevertheless, the legislative purpose is clear from the language of

the statute. A child is not expected to understand or act upon his legal rights; he should not be made to suffer for failure to do so. Nor should he be penalized for the ignorance or neglect of his parents or guardian in failing to assert those rights. This legislative policy is a narrow one and not to be loosely extended beyond its statutory dimensions, *Uscienski v. National Sugar Refining Co.*, 19 *N. J. Misc.* 240, 18 *A.* 2d 611 (C. P. 1941), but within the confines prescribed by the statute it is a strong policy, implicating as it does the duty of the State to act in its capacity as *parens patriae. Cf. In re Sheehan's Estate,* 290 *Ill. App.* 551, 554, 9 *N. E.* 2d 63, 65 (Ill. App. Ct. 1937).

The majority properly identifies the policy considerations motivating the adoption of the ten-year statute of limitations *Ante* at 121. These policy considerations are little different from those motivating statutes of limitations generally. *See, e. g., Lopez v. Swyer,* 62 *N. J.* 267, 274 (1973). There is no reason for treating the countervailing policy considerations embodied in *N. J. S. A.* 2A:14–21 as being of lesser weight in comparison to *N. J. S. A.* 2A:14–1.1 than they are in comparison with other statutes of limitations. In either case, a person, when he reaches the age of majority, should be in precisely the same legal position as he would have been at the time the cause of action accrued had he been an adult. Reading *N. J. S. A.* 2A:14–1.1 and *N. J. S. A.* 2A:14–21 together, an infant may file suit any time until he reaches the age of majority and any time during a period thereafter equal to amount of time he would have had under *N. J. S. A.* 2A:14–1.1 had he been an adult at the time of the injury, subject, of course, to the limitations contained in *N. J. S. A.* 2A:14–2. Thus the infant plaintiff in this case, who was injured approximately nine years after completion of the construction and who was approximately 16 years old at the time of the injury, could have filed suit any time within a period of six years following the injury. *Cf. Smith v. Felter,* 61 *N. J. L.* 102 (Sup. Ct. 1897).

It should be noted that this is not a case of the Legislature creating a novel cause of action with its own statute of limitations. In such circumstances, the tolling statute has been construed to be inapplicable. *E. g., Grabert v. Central R. R. Co.*, 91 *N. J. L.* 604 (E. & A. 1918); *Uscienski v. National Sugar Refining Co.*, 19 *N. J. Misc.* 240, 18 *A.* 2d 611 (C. P. 1941); *cf. Gilette v. Delaware, Lackawanna & Western R. R. Co.*, 91 *N. J. L.* 220 (E. & A. 1917). *N. J. S. A.* 2A:14–1.1, adopted as *P. L.* 1967, *c.* 59, involved merely the imposition of additional limitation on already existing causes of action.

I would hold that the claim of Kathleen O'Connor against Harrison Park, Inc. was not barred by *N. J. S. A.* 2A:14–1.1. The claims of her parents, which, under *N. J. S. A.* 2A:14–2.1, may be brought within the same period of time as her own, were also seasonably filed. Therefore I would affirm the decision of the Appellate Division remanding these claims for a new trial, although not for the reasons relied upon below.

*For affirmance and remandment*—Justices JACOBS, HALL, SULLIVAN and CLIFFORD—4.

Concurring in part and dissenting in part—Justice PASHMAN—1.