**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1296-23

OGUZ YILDIZ,

    Plaintiff-Respondent,

v.

SEMANUR YILDIZ,

    Defendant-Appellant.

_____

> Submitted December 19, 2024 – Decided January 28, 2025
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0474-22.
>
> Weinberger Divorce and Family Law Group, LLC, attorneys for appellant (Richard A. Outhwaite, on the brief).
>
> Steven A. Garner, attorney for respondent.

PER CURIAM

Defendant Semanur H. Yildiz, the former spouse of plaintiff Oguz Yildiz, appeals from a November 17, 2023 order denying her motion to vacate a June 26, 2023 final judgment of divorce (FJOD) that was entered after a default hearing following the court's dismissal of her answer and counterclaim with prejudice for discovery violations and failure to comply with court orders. On appeal, defendant contends the FJOD should be set aside because her failure to respond to discovery and the court's orders was excusable, and certain terms of the final judgment are inequitable and unconscionable. Having considered defendant's arguments in light of the record and applicable principles of law, we affirm in part and remand in part.

I.

Plaintiff and defendant were married on June 24, 2006, in Istanbul, Turkey. A child was born of the marriage. Plaintiff filed a complaint for divorce on January 5, 2022, and defendant filed an answer and counterclaim demanding, in relevant part, the court dissolve the marriage, equitably distribute all property owned or acquired by the parties during the marriage and compel plaintiff to pay alimony.

2

The court issued a case management order on April 25, 2022, which established a discovery schedule, ordered the matter scheduled before an early settlement panel, and scheduled an additional conference for June 6, 2022.

Defendant immediately failed to comply with the terms of the case management order, and specifically her obligations to provide information regarding her income and bank accounts held in her name, and income from her separately owned real estate agency. Plaintiff's counsel repeatedly reached out to defendant's then-counsel and requested defendant produce previously demanded tax returns and financial documentation. After defendant failed to comply, plaintiff filed a motion to compel, which the court granted on October 28, 2022. Among other deficiencies, counsel attested defendant only produced the parties' joint tax returns and defendant's separate business tax return for 2022. Counsel maintained defendant refused to produce her separate bank accounts and believed as a result she was "hiding a large amount of money."

The court directed defendant to: 1) comply with plaintiff's discovery demands within fourteen days; 2) provide plaintiff with the last twelve months of bank statements listed on defendant's case information statement (CIS); and 3) any other bank accounts for the prior twelve months by November 11, 2022. The court noted any delay in plaintiff's service of his discovery upon defendant

3

did not excuse "[d]efendant's disproportionate indolence towards answering [p]laintiff's requests in a timely manner."

The court also found defendant in violation of the April 25, 2022 case management order and directed defendant to reimburse plaintiff in the amount of $1,700, representing plaintiff's reasonable counsel fees related to the motion to compel. It also ordered defendant to pay plaintiff $50 per day each day the fee award was not paid as a sanction. The order provided "[i]n the event [d]efendant does not comply by November 11, 2022, [p]laintiff may move for dismissal or suppression pursuant to [Rule] 4:23-5."

While the aforementioned motion was pending, defendant's counsel moved to be relieved as her counsel. Counsel informed the court the communication "between the client and the firm has broken down in such a manner and to such an extent" that she could not properly represent defendant. Counsel further attested "[d]efendant has not provided [her] office with necessary information to continue settlement discussions and prepare the next steps in her matter." Defendant and her counsel ultimately signed a substitution of attorney and defendant thereafter proceeded pro se.

After defendant continued to ignore her discovery obligations, and the court's two prior orders compelling her to produce critical financial information,

A-1296-23

plaintiff moved to dismiss defendant's answer and suppress her counterclaim without prejudice under Rule 4:23-5(a)(1), consistent with the court's October 28, 2022 order.  In support of his application, plaintiff certified defendant failed to comply with the court's October 28 order as she only provided financial statements for three of her four accounts listed on her CIS, and failed to provide any information subject to plaintiff's other discovery demands.

Notably, plaintiff also certified one of defendant's accounts had $121,373.26 balance in September of 2021, but the following month only $525.10 remained in the account.  Plaintiff attested the approximately $120,000 of withdrawn funds could not be reconciled with the produced statements.  In addition, plaintiff certified defendant's records reflected two separate $10,000 transfers to an account that had not been disclosed previously.

The court granted plaintiff's application, in part.  It dismissed defendant's answer and suppressed her counterclaim without prejudice and granted her sixty days to file a motion to reinstate her pleadings, conditioned on the production of all outstanding discovery, but denied plaintiff's request to find defendant in default.  Instead, the court ordered that in the event defendant failed to comply with its order and Rule 4:23-5(a)(1), plaintiff could move to dismiss defendant's counterclaims and suppress its answer with prejudice under Rule 4:23-5(a)(2).

The court also found defendant in violation of the court's October 28 order and ordered defendant to pay counsel fees in the amount of $1,850, sanctions in the amount of $250 for every day defendant did not satisfy the outstanding fee award. It issued an additional $2,950 sanction for defendant's failure to comply with the October order, which represented fifty-nine days of non-compliance, and entered a judgment representing the aggregate of these sums in the amount of $6,500. The court memorialized its ruling in a January 9, 2023 order and again explained the bases for its decision in a written opinion.

Defendant continued not to comply with the court's orders and her discovery obligations. As a result, plaintiff was forced to file a third application in which it sought to dismiss defendant's answer and counterclaim with prejudice under Rule 4:23-5(a)(2), to enter default, and award reasonable attorneys' fees. In an April 17, 2023 order and accompanying written statement of reasons, the court granted plaintiff's motion, dismissed defendant's answer and counterclaim with prejudice, ordered defendant to pay $1,790 in counsel fees, found defendant in violation of the court's October 28, 2022 and January 9, 2023 orders, determined defendant to be in default, and directed the clerk to schedule a default hearing pursuant to Rule 5:5-10. The court explained

defendant continued to violate court orders and specifically found her "noncompliance and nonparticipation" both "deliberate and contumacious."

On May 9, 2023, plaintiff filed a motion seeking a final judgment supported by a notice of proposed final judgment and equitable distribution, with accompanying exhibits, under Rule 5:5-10. The court subsequently scheduled and conducted a hearing on plaintiff's application, which was attended by both parties on June 26, 2023.[1]

The notice of proposed final judgment addressed issues related to custody, child support, college contributions, insurance, the parties' bank accounts, and other issues related to equitable distribution, among other topics. As relevant to the issues before us, the proposed judgment sought a permanent waiver of alimony and for the parties to maintain sole possession of their respective retirement accounts. The agreement also provides that defendant would retain all interests in her business free and clear of any interest or claims of plaintiff.

In support of the final judgment, plaintiff maintained defendant failed to account for significant unreported income as evidenced by her six-figure withdrawals from her savings accounts, numerous vacations, and previously

---

[1] Defendant failed to include a transcript from the June 26, 2023 hearing in the record, contrary to Rules 2:5-4(a); 2:5-3(b).

A-1296-23

unknown investment accounts. Plaintiff also noted defendant owed $8,290 in attorneys' fees due to prior court orders and that, since their separation, plaintiff continued to pay defendant's rent, utility bills, and car insurance.

On June 26, 2023, the court issued the FJOD. The judgment, among other things, provided for a permanent and mutual waiver of alimony and for the parties to maintain sole possession of their respective retirement accounts.

Defendant filed a motion to vacate the judgement of divorce on September 19, 2023, supported by a certification. Plaintiff opposed the application and sought additional attorneys' fees and sanctions related to defendant's continued noncompliance with the court's orders.

In her certification, defendant argued she was "self-represented" at the time the court entered default, was "not sure" how the default occurred, and the matter deserved to be decided on the merits as the FJOD was neither fair nor equitable. Defendant maintained it would be unconscionable for her not to receive alimony and her share of plaintiff's retirement accounts. In support, she stated plaintiff worked consistently throughout the marriage, possessed a Ph.D., worked as a public-school principal, and earned approximately $136,000 in the prior year.

A-1296-23

Defendant also noted she only worked "sporadically" throughout the marriage, was currently receiving public assistance, her income varied considerably given her profession as a real estate agent, and was consistently lower than plaintiff's. In further support, she attached an unsigned and undated draft "divorce settlement agreement" evidencing a purported prior agreement between the parties that contained a spousal support clause requiring plaintiff to pay $300 per month in limited duration alimony. Defendant argued her non-responsiveness was due, in part, to her confusion and misunderstanding of legal proceedings and her attempts to obtain counsel through "legal services."

Plaintiff opposed the motion and, in his certification, recounted defendant's intransigence in the discovery process, her continued failure to produce relevant financial information regarding her business and bank accounts, and her failure to comply with court orders, including the failure to reimburse his counsel with respect to the court ordered fees. He also detailed his inability to proceed to mediation due to the lack of information and cooperation.

Plaintiff further noted defendant failed to participate in the litigation, even when represented by counsel. He contended defendant had no right to alimony as she owned a real estate company for many years, made six-figure transfers

A-1296-23

during the litigation, failed to disclose the existence of her investment accounts, and various withdrawals and transfers of funds earned during the marriage that would establish her lack of need for support.

Defendant's reply certification disputed plaintiff's factual assertions and maintained she provided her former lawyer with any requested documentation in a timely manner, traveled only for business purposes, and described the psychological impact and emotional harm caused by the divorce. She could not afford her original attorney and attempted to obtain the services of pro bono counsel.

Defendant attested that her income was inconsistent, which was a common circumstance in the real estate industry, that plaintiff was fully aware of. She accumulated the approximately $100,000 in her account over the course of her career, and she used the other accounts only for investment purposes. Defendant also maintained she was a supportive spouse, contrary to defendant who abandoned her and their child and ignored his family and financial obligations. She also accused plaintiff of acts of domestic violence during the marriage.

After considering the submissions of the parties and oral arguments, the court denied defendant's application and granted plaintiff's cross-motion. It specifically found defendant in violation of the court's October 28, 2022 order,

ordered defendant to reimburse plaintiff for counsel fees, and granted, as modified, plaintiff's request for sanctions.

The court issued a conforming order on November 17, 2023, with an accompanying written statement of reasons in which it determined defendant failed to establish good cause or excusable neglect sufficient to vacate the final judgment. The court found defendant's work-related reasons for failing to respond to discovery and violating court orders did not excuse her repeated failure to communicate with counsel and the court sufficient to warrant vacating the FJOD.

## II.

Defendant argues she established "good cause" and a meritorious defense as required by Rule 4:43-3 to vacate the entry of default. In support, defendant largely reprises her arguments made before the trial court and claims she did not "put her . . . 'head in the sand'" and ignore the case. Instead, she again contends work-related travel, and her ignorance of the judicial process caused her inactions and continues to maintain she provided her prior counsel with the information counsel requested.

Defendant further contends under Rule 4:50-1(f), the FJOD is unconscionable as it denies a dependent spouse alimony and equitable

distribution of plaintiff's retirement accounts in a long-term marriage where plaintiff earns significantly more than her. She maintains the court should have permitted the case to proceed on the merits as plaintiff will not be prejudiced, but she will suffer extreme prejudice if denied relief.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, [and] credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). As such, we will defer to the Family Part's factual findings and legal conclusions unless convinced they are "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). Challenges to legal conclusions, as well as a trial court's interpretation of the law, are subject to de novo review. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

A-1296-23

Under Rule 5:5-10, in matrimonial litigation involving issues of equitable distribution, alimony and child support, "[d]efaults shall be entered in accordance with R[ule] 4:43-1, except that a default judgment . . . may be entered without separate notice of motion as set forth in R[ule] 4:43-2." Rule 4:43-1, in turn, requires that the entry of default be predicated on a party's "fail[ure] to plead or otherwise defend . . . or if the answer has been stricken with prejudice."

As the default here was predicated on defendant's violation of her discovery obligation and failure to comply with the court's orders, we briefly discuss the two-step dismissal provisions of Rule 4:23-5(a), as it informs our consideration regarding whether defendant established good cause, or if her conduct was otherwise excusable warranting relief from the final judgment. Rule 4:23-5(a)(1) provides that a party seeking discovery may move for dismissal or suppression of the other party's pleadings without prejudice if the other party has not provided discovery. Moreover, if the order of dismissal or suppression has not been vacated, the party entitled to discovery may, after the expiration of sixty days from the date of the earlier order, move to dismiss or suppress the other party's pleadings with prejudice. R. 4:23-5(a)(2).

A-1296-23

Rule 4:23-5(a)(2) further provides that the motion "shall be granted unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either the demanded and fully responsive discovery has been provided or exceptional circumstances are demonstrated." Ibid. If a party's answer is "stricken with prejudice, the clerk shall enter a default on the docket as to such party." R. 4:43-1.

A trial court should view a motion to set aside a default judgment under Rule 4:43-3 and Rule 4:50-1, "'with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (omission in original) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)). We review a court's determination of such motions under an abuse of discretion standard. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). There is "an abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Under Rule 4:43-3, a court may vacate the entry of default upon a mere showing of "good cause," which exists in the "presence of a meritorious defense

. . . and the absence of any contumacious conduct." O'Connor v. Altus, 67 N.J. 106, 129 (1975). Considering whether good cause to vacate default exists "requires the exercise of sound discretion by the court in light of the facts and circumstances of the particular case." Ibid.

Rule 4:50-1 "is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" Guillaume, 209 N.J. at 467 (quoting Mancini, 132 N.J. at 334). The importance of finality "must be 'weighed in the balance with the equally salutary principle that justice should be done in every case.'" Nowosleska v. Steele, 400 N.J. Super. 297, 304 (App. Div. 2008) (quoting Hodgson v. Applegate, 31 N.J. 29, 43 (1959)). "Ultimately, 'equitable principles' 'should . . . guide[]' a court's decision to vacate a default judgment." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 124 (App. Div. 2021) (alterations in original) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

The rule establishes six alternative grounds for relief from a final judgment, whether obtained by default or after trial. Relief under subsection (f) is available in "exceptional circumstances" and "only when the court is presented with a reason not included among any of the reasons subject to the

one[-]year limitation." Baumann v. Marinaro, 95 N.J. 380, 395 (1984). The boundaries of Rule 4:50-1(f), "are as expansive as the need to achieve equity and justice." Palko v. Palko, 73 N.J. 395, 398 (1977) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). Thus, application of subsection (f) "must be resolved on its own particular facts," Baumann, 95 N.J. at 395, and "[n]o categorization can be made of the situations which would warrant redress under subsection (f)," Palko, 73 N.J. at 398. "In deciding if relief is warranted, a court may consider the movant's delay, the justification for its request, and potential prejudice to the responding party." BV001 REO Blocker, LLC, 467 N.J. Super. at 126.

Application of Rule 4:50-1(f) is "limited to 'situations in which, were it not applied, a grave injustice would occur.'" As our Supreme Court stated in In re Guardianship of J.N.H.:

> The very purpose of a Rule 4:50 motion is not . . . to advance a collateral attack on the correctness of an earlier judgment. Rather, it is to explain why it would no longer be just to enforce that judgment. The issue is not the rightness or wrongness of the original determination at the time it was made but what has since transpired or been learned to render its enforcement inequitable.
>
> [172 N.J. 440, 476 (2002).]

A-1296-23

The trial court correctly concluded defendant failed to establish "good cause" sufficient to vacate the entry of default under Rule 4:43-3. As we detailed, the entry of default was preceded by defendant's repeated failure to provide discovery and comply with court orders leading to the suppression of her pleadings under Rule 4:23-5(a)(2). We have no reason to disturb the court's factual findings that defendant's self-represented status and work situation did not excuse her communicating with counsel, responding to discovery, and complying with court orders. Defendant's conduct was inexcusable, and under the facts presented, the court was well within its discretion to deny her request to vacate the entry of default.

However, we reach a different conclusion regarding defendant's arguments under Rule 4:50-1(f). Addressing two provisions of the FJOD, defendant contends the failure to provide alimony, of any duration, as well as to deny an equitable distribution of defendant's retirement accounts, rendered the FJOD "inequitable," and "unconscionable," which warranted vacating the FJOD. Before the trial court, she certified to facts, which she contends supported an award of alimony and a fair and just equitable distribution of the parties' marital assets; and contends, contrary to the court's finding, her initial answer and counterclaim sought such relief.

Although the court's factual findings addressed the good cause standard under Rule 4:43, and whether excusable neglect existed as required under Rule 4:50-1(a), defendant also sought relief under the catch-all provision of Rule 4:50-1(f), and it does not appear the court's factual findings addressed that subsection specifically in the context of defendant's unconscionability claims related to the alimony and equitable distribution provisions of the FJOD. Without a more complete explanation of the court's decision as required by Rule 1:7-4, we cannot perform our appellate function. For that reason, we are constrained to remand this issue to the trial court for a more expansive statement of reasons supporting its decision to deny defendant further relief under Rule 4:50-1(f).

On remand, the court should consider the length of defendant's delay in seeking relief from the final judgment, whether her request is justified, if any grave injustice would visit defendant if the relief was requested, the potential prejudice to plaintiff if the FJOD was vacated in whole or in part, and if it "would no longer be just to enforce that judgment," considering the circumstances. See In re Guardianship of J.N.H., 172 N.J. at 474; BV001 REO Blocker, LLC, 467 N.J. Super. at 126. In addressing our remand instructions, the court, of course,

18

shall have the discretion to require additional submissions of the parties or supplemental proceedings, as appropriate.

Our opinion does not address any of the other portions of the court's November 17, 2023 order, or any other orders, as defendant did not specifically challenge them before us.  However, we do not intend to limit the court's ability to reconsider its earlier decisions if appropriate.  We do not infer, one way or the other, whether any such reconsideration is required.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11–3(e)(1)(E).

Affirmed in part and remanded in part for further proceedings consistent with our opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1296-23