224 N.J. Super. 485 (1988)
540 A.2d 1307
TRUSTEES OF THE LOCAL 478 TRUCKING AND ALLIED INDUSTRIES PENSION FUND AND THE JOINT WELFARE FUND OF EMPLOYERS AND LOCAL 478, IBT, PLAINTIFF-RESPONDENT,
v.
BARON HOLDING CORPORATION, DEFENDANT-APPELLANT, AND CLINTON CAPITOL CORPORATION AND CITY TRUST CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1988.
Decided April 12, 1988.
*486 Before Judges PETRELLA, DREIER and ASHBEY.
Martha A. Suhayda argued the cause for appellant Baron Holding Corporation (Martha A. Suhayda, attorney).
*487 John A. Craner argued the cause for respondent (Craner, Nelson, Satkin & Scheer, attorneys; John A. Craner and Norman W. Albert, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant Baron Holding Corporation (Baron Holding) has appealed from a default judgment entered against it in this mortgage foreclosure action. It also appeals from a denial of its motion to vacate its default. Baron Holding had given two mortgages as security for its guaranty of certain obligations of Baron Motor Carriers (Baron Motors). The Hon. Harry A. Margolis, J.S.C. denied defendant's motion to vacate the default and entered a judgment of foreclosure against defendant for $412,719.72 plus $4,227.20 in attorney fees. Defendant then entered into Chapter 11 proceedings in federal court, and at the behest of Baron Holding, the Bankruptcy Court permitted special counsel, paid by the stockholder, Albert Baron, Sr. (Baron, Sr.), to take this appeal.
Baron Motors and Baron Holding are closely held family corporations. As noted, Baron, Sr. is the sole stockholder of Baron Holding, his son, Albert Baron, Jr., (Baron, Jr.) is the president, and Baron, Jr.'s wife, Janet Baron, is the secretary. Baron, Jr. is the sole stockholder and president of Baron Motors, and Janet Baron is the secretary. Baron Motors occupies and transports commodities out of facilities owned by Baron Holding on Blanchard Street in Newark.
Pursuant to a series of collective bargaining agreements and a declaration of trust with Local 478 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Baron Motors was obligated to make contributions to Local 478's Pension and Welfare Funds (plaintiff). Baron Motors fell into substantial arrears and entered into two separate agreements to repay the arrearages, interest and penalties. The first agreement, dated February 13, 1984, *488 was a settlement of pending litigation; the second was dated June 13, 1986. As part of the arrangement, Baron Holding signed guaranties and executed separate mortgages on the Blanchard Street corporate property to secure the guaranties.[1] The 1984 mortgage to secure Baron Motors' debt to plaintiff was for $150,775.59. The 1986 mortgage was for $350,570.69, which appears to represent Baron Holdings' remaining equity in the property.
Baron Motors failed to make timely payments to the Welfare and Pension Funds, and pursuant to the terms of the agreement, plaintiffs elected to sue Baron Holding on the two guaranties and to foreclose on the mortgages to recover all arrearages, interests, penalties, attorney fees and costs. Defendant defaulted, and as noted earlier, a default judgment was entered.
On this appeal Baron Holding contends that the trial judge erroneously refused to vacate the default, arguing that the summons and foreclosure complaint were improperly served, that both the 1984 and the 1986 mortgages from Baron Holding are invalid, and that the ERISA penalties are only applicable against Baron Motors, not Baron Holding.
The threshold question presented by defendant is whether there has been valid service on defendant Baron Holding. If service was improper, then the complaint should have been dismissed. If service was proper, then to successfully move to set aside an entry of default, defendant is required to show good cause. R. 4:43-3. Although the requisite good cause does not appear to be readily quantifiable, it should be noted that even an application to set aside a default judgment, which requires a more stringent showing of cause under R. 4:50-1 *489 than the setting aside of a default, is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div.), aff'd 43 N.J. 508 (1964). Nevertheless, before a default is set aside, defendant must at the very least show the presence of a meritorious defense worthy of a judicial determination. O'Connor v. Abraham Altus, 67 N.J. 106, 128-129 (1975); Bank of New Jersey v. Pulini, 194 N.J. Super. 163, 165-166 (App.Div. 1984). This is especially so in a foreclosure case where the mere denominating of the matter as a contested case moves it from the expeditious dispostion by the Office of Foreclosure in the Administrative Office of the Courts, R. 1:34-6 and R. 4:64-1(a), to a more protracted treatment by the Chancery Division providing discovery and raising other problems associated with trial calendars. If there is no bona fide contest, a secured creditor should have prompt recourse to its collateral.

I
Service must be in accordance with R. 4:4-4. The pertinent portion of the Rule provides that proper service of a corporation is upon
either an officer, director, trustee, or managing or general agent; or any person authorized by appointment or by law to receive service of process on behalf of the corporation; or the person at the registered office of the corporation in charge thereof. If service cannot be made upon any of the foregoing, then it may be made upon the person at the principal place of business of the corporation.... [R. 4:4-4(c)(1)].
Service was made upon Rita Scudieri, the receptionist for Baron Motors in Baron, Jr.'s office. Defendant, however, contends that Ms. Scudieri has "no connection with Holding whatsoever." The trial judge examined the proof of service which states that an Essex County Deputy Sheriff served Baron Holding Corporation with a summons on November 12, 1986 at its usual place of business leaving a copy of the complaint with "Rita Scudieri  authorized to accept service." Noting that Ms. Scudieri represented that she was authorized to accept service, *490 that neither Baron, Jr. nor Ms. Scudieri contended that she was not authorized and that Baron Motors and Baron Holding shared the same premises, the trial judge deemed the service to be effective.
The two-pronged test to determine whether service was valid is that
the representative should be so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service. [O'Connor v. Abraham Altus, supra, 67 N.J. at 128 adopting the federal test from American Football League v. National Football League, 27 F.R.D. 264, 269 (D.Md. 1961)].
In O'Connor, the Court held that it was reasonable for the deputy sheriff to assume that the receptionist to the managing agent had authority to receive service under R. 4:4-4(d)(2), because she was "sufficiently integrated with the small organization which had the equitable interest in the premises...." 67 N.J. at 128. In this case, the deputy did not have "to imply" that Ms. Scudieri had authority to receive service. The unrebutted proof shows that Ms. Scudieri represented to the deputy that she was authorized to accept service. Also, the office was that of Baron, Jr., who was also president of Baron Holding. Proper service should have been and was made upon the corporation, not upon Baron, Sr. as its stockholder. The judge's determination will not be disturbed.

II
If defendant demonstrated that it had a meritorious defense, then the default still might have been set aside. N.J.S.A. 14A:3-1(1)(g) recognizes a corporation's power to act as a guarantor. N.J.S.A. 14A:3-3 acts as a limitation on this authority:
A corporation may give a guaranty not in furtherance of its corporate purposes or those of any subsidiary, joint venture or other enterprise in which it has an interest, only when authorized at a meeting of shareholders by the affirmative vote of two-thirds of the votes cast by the holders of each class and series of shares entitled to vote thereon. If authorized by a like vote, such guaranty *491 may be secured by a mortgage of or a security interest in all or any part of the corporate property, or an interest therein, wherever situated.
This statutory limitation on a corporation's power to guarantee payment of another's debts first raises the question of whether the guaranties in question were in furtherance of any corporate purposes of either Baron Holding or any "other enterprise in which [Baron Holding] has an interest." If the guaranties were in furtherance of a corporate purpose, the requirement of two-thirds stockholder approval, viz, that of Baron, Sr., is inapplicable. If the guaranties were not in furtherance of a corporate purpose, and if they were not appropriately authorized, they are void.
How expansively "in furtherance of corporate purposes" should be interpreted has yet to be fully explored by the New Jersey judiciary.[2] We need not do so here. We have not been given a copy of Baron Holding's articles of incorporation, and we do not have enough information available about Baron Holding or its business relationship with Baron Motors to identify Baron Holding's stated corporate purposes. It would be difficult and maybe even inappropriate for an appellate court to determine whether these guaranties were in furtherance of such unknown specific corporate purposes.
But even assuming that Baron Holding's articles of incorporation do not enumerate specific corporate purposes which encompass these guaranties, there are persuasive arguments that the guaranties were in furtherance of Baron Holding's general corporate purposes. Plaintiff argues that:
Baron Holding had but one tenant  Baron Motor Carriers. Its ability to stay in business was vital to Mr. Baron, Sr. since he derived a substantial income from Baron Motor Carriers. Its success also benefited Baron Holding since Baron Motor was paying all the carrying costs of that real estate.
*492 There is, however, an even stronger argument that at least the second guaranty was in furtherance of Baron Holding's corporate purposes. Once Baron Holding guaranteed the first note and gave the 1984 mortgage, it was within its corporate purposes to stave off foreclosure.[3] Defendant, however, argues that to mortgage corporate property for the benefit of another in a total amount of more than 1 million dollars could under no circumstances "be in furtherance of any rational corporate goal." We therefore must carefully examine the language of and the circumstances surrounding the guaranties and mortgages.
Assuming that the guaranties were not in furtherance of Baron Holding's corporate purposes, defendant cannot launch a successful ultra vires defense if the requisite shareholder approval was garnered, or if the mortgages are shown to secure a direct obligation of Baron Holding. At the motion to set aside the default, defendant's attorney told the judge that Baron, Sr., the sole stockholder of Baron Holding, gave a written consent to the 1984 mortgage. Plaintiff also submitted the minutes of the February 11, 1984 Baron Motors' Board of Directors meeting where it was moved and resolved to have Baron Motors execute the 1984 note. The note itself mentions that Baron Holding executed a mortgage to secure its guaranty of that note. Baron Sr. was present at that meeting, implicitly confirming that Baron Holding's 1984 guaranty was made with Baron Sr.'s knowledge and acquiescence. The 1986 guaranty, however, requires more scrutiny, since there appears to be no evidence that Baron, Sr. authorized the 1986 guaranty or even had knowledge of it.
Plaintiff asserts that the 1986 note and guaranty "were really superfluous since the unpaid sums announced therein were actually included in and covered by the note and guaranty *493 of February 13, 1984. At the very least, the note dated June 13, 1986 was an extension of the note dated February 13, 1986 [sic., 1984]." This is substantially correct. The 1984 guaranty provides that:
This shall be a continuing guaranty extending to any notes given in extension or renewal of the within Note, notwithstanding the original Note may have been surrendered, provided the liability of Baron Holding Corporation shall not be increased over the amount .. . as set forth in the original Note plus accrued and unpaid interest, collection costs and attorneys fees, and any continuing contributions of Baron Motor Carriers, Inc. for the period February 1984 and after which may be in default. [Emphasis supplied].
In a letter dated June 13, 1986, plaintiff requested defendant to pay $133,000 with interest "payable over a 5 year payout period ... in addition to your current Welfare and Pension payments and your present `mortgage' payment in accordance with prior arrangements entered into with your company approximately 2 years ago." Plaintiff also requested defendant to execute a fourth mortgage. Baron Motors amended its agreement to that letter, and, in an addendum, Baron Holding guaranteed the obligation, stating that
[t]he sum of $350,570.69 has been utilized by the Trustees to represent a breakdown of the obligations of Baron Motor Carriers, Inc. from January 1, 1981 to date, as more particularly set forth on the attachments, and takes into consideration the obligations covered by the Mortgage and now heretofore executed by Baron Motor Carriers, Inc. and guaranteed by Baron Holding Corporation and dated February 13, 1984, less credit for payments on account of said obligation.
The addendum further noted that upon final agreement concerning the exact sum due, a new note would be signed by Baron Motors, inclusive of principal, interest and penalties; but if all payments were made as provided in the note, penalties would be waived. At the bottom of the addendum, after Baron Motors' signatures, is the simple statement: "We hereby guarantee the within obligation," followed by Baron Holdings' name and the signatures of its president and secretary.
With the exception of the additional undertaking to guarantee past and future interest and penalties, the new guaranty added nothing. The language of the 1984 guaranty already had encompassed future payments for "continuing contributions" *494 as well as all amounts included in the original 1984 judgment, and "interest, collection costs and attorney's fees," with respect to that earlier judgment. The 1986 mortgage, except as it related to the penalties, was given to secure a corporate debt already assumed. The mortgage was authorized by the Board of Directors and executed by the officers of the corporation. It is a reasonable assumption that had the guaranty of the additional amounts, including penalties, not been given in 1986, the 1984 mortgage would have been foreclosed. Since that mortgage was merely for the balance owing in 1984, the additional obligation of Baron Holding under its 1984 guaranty of the continuing contributions would have been the subject of an additional action. Any judgment obtained would have been the further subject of execution proceedings on the remaining interest of Baron Holding in the real estate. To forestall such expected action on the part of plaintiff, it was not unreasonable for Baron Holding's directors and officers to authorize the additional guaranty of the penalties and to execute a new mortgage giving plaintiff substantially the same rights as it could have exercised through a legal action, judgment and execution.
We reach the conclusion we do without expressing any opinion concerning the rights of Baron, Sr. against Baron Motors or Baron, Jr. and his wife for permitting the defaults to occur that occasioned the loss of the Baron Holding property. If there were breaches of fiduciary duty[4] or other defalcations, appropriate legal remedies exist.[5] All that we determine by *495 this opinion is that vis-a-vis plaintiff, the mortgages were valid and not subject to the defenses raised by substituted counsel authorized to advance these defenses by the Bankruptcy Court. There appears, therefore, to be no factual or legal impediment to the foreclosure of the two mortgages for the full amount claimed by plaintiff. We note that in its supplemental letter brief, plaintiff alleges that additional sums have come due since the entry of judgment. Any application to amend the judgment to reflect such sums should be made to the trial judge.
The default judgments entered by Judge Margolis in the Chancery Division are affirmed.
NOTES
[1] Baron Holding previously had mortgaged the Blanchard Street property in 1981 to Midlantic National Bank to secure $200,000. On February 13, 1984 Baron Holding again mortgaged the same property to Clinton Capitol Corporation with assignment to City Trust Corporation to secure $375,000. The first and second mortgagees were made parties to these proceedings, but were dismissed by order of the court.
[2] A Rutgers Law Review Note examines the possible interpretations of and the attendant difficulties with this language. Note, "The Corporate Guaranty Revisited: Upstream, Downstream, and Beyond  A Statutory Approach," 32 Rutgers L.Rev. 312 (1979).
[3] While we note the distinction between actual corporate "purposes" and mere benefits explained in the Rutgers Law Review Note, supra, at 319 n. 50, it is at least an implied purpose of a corporation to preserve its sole asset.
[4] Note that the Commissioners' Comment to N.J.S.A. 14A:3-3 states that "[t]he section is not intended to affect the application of the law of fraudulent conveyances, voidable preferences or breach of fiduciary duty by directors or controlling shareholders."
[5] Baron Holding also urges that there was a lack of consideration and duress, and that these factual questions should have been resolved by the trial judge. There is no question that there was consideration for both of the mortgages and guaranties. The underlying agreements clearly show a forbearance and change of position by plaintiff in reliance upon Baron Holding's actions. See Continental Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 171-172 (1983), cert. den. 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983). The duress argument also must fail. As noted in Continental Bank of Pa. v. Barclay Riding Acad., economic duress can only be successfully urged if the pressure exerted was "inherently wrongful." Id. at 176. In this case the ERISA payments were due to plaintiff, and Baron Motors' economic straits were of its own making; they were not attributable to any wrongful acts of plaintiff. Baron Holding had the option of denying the original guaranty, letting Baron Motors' business fail and then seeking a new tenant to the premises. There was, therefore, no inherently wrongful pressure exercised by plaintiff upon Baron Holding. Lastly, we note that the ERISA penalties are not being applied directly to Baron Holding. The Corporation is secondarily liable based upon its 1986 guaranty.