**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1131-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DENISE WILLIAMS,

    Defendant-Appellant.

_____

        Argued May 11, 2021 – Decided June 1, 2021

        Before Judges Mawla and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Municipal Appeal No. 19-0002.

        Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

        Brandon Hawkins, Deputy Cherry Hill Township Solicitor, argued the cause for respondent (Brandon Hawkins, of counsel and on the brief).

PER CURIAM

Defendant Denise Williams appeals from an October 25, 2019 order adjudicating her motion for reconsideration of an order finding her guilty of violating N.J.A.C. 5:23-2.16(f), a regulation of the Uniform Construction Code (the Code).[1]  We affirm.

I.

We take the facts from the record of the trial in the municipal court and the proceedings before the Law Division judge.  In March 2009, defendant obtained a building permit to construct a home in Cherry Hill Township.  The permit was supposed to expire in 2012, but was extended until December 31, 2015, pursuant to the Permit Extension Act (PEA) N.J.S.A. 2A:58-10 to -12.  Defendant did not renew the permit or seek an extension, and on April 25, 2017, the township issued a Notice of Violation and Order to Terminate for violation of N.J.A.C. 5:23-2.16(f)(1)(ii).  The notice ordered defendant to "terminate the said violations on or before" May 24, 2017, or face an "assessment of penalties of up to $1,000[] per week per violation, and a certificate of occupancy will not be issued until such penalty has been paid."

---

[1] The statutory provisions of the Code are found at N.J.S.A. 52:27D-119 to -141, and the regulatory provisions for administration, enforcement, and process under the Code are found at N.J.A.C. 5:23-2.1 to -2.39.

Township Code Enforcement Officer William Cattell testified the township served the notice on defendant via regular and certified mail at the addresses she provided, namely, a P.O. Box and the property where the structure was being built. The notices sent by regular mail were not returned and the notice sent to the structure by certified mail was returned undeliverable.

After reinspection of the structure on June 22, 2017, the township found defendant "failed to comply with [the] notice . . . in violation of [N.J.A.C.] 5:23-2.31(e)[.]" It therefore assessed penalties of $2,000 "for each violation for a total penalty of $2,000[]" and "for each . . . week . . . that any of the said violations remain outstanding after [July 24, 2017,] an additional penalty of $2,000[] per . . . week . . . shall result[.]" The township sent this notice to both the P.O. Box and the property address. The certified mail notices sent to the P.O. Box and the property address were returned undeliverable, but the notices sent by regular mail were not. Cattell testified he also posted the violation notice along with a Notice and Order of Penalty for having an unsafe structure on the structure itself because the structure was left open to public trespass.

Cattell described the nature of the violations and the township's enforcement efforts. He explained plaintiff corrected the unsafe structure violation by fixing a fence in order to prevent public trespass on the property

3

and he sent her a Notice of Abatement indicating this violation was satisfied. However, he testified that as of the date of trial, July 20, 2018, the township had "one active permit on this property for an exterior stucco only" and "there has been [no] compliance with [the construction permit] violation to date[.]"

Explaining the steps taken by the township before assessing fines, Cattell stated:

> It's a two-step process. I issue a Notice of Violation and Order to Terminate [for violations under N.J.A.C. 5:23-2.16(f)(l)(ii)]. I give the person a reasonable amount of time to correct the violation. If they do not do that then I have to go to [N.J.A.C. 5:23-2.31(e)] and issue the penalty. That's the penalty section of the . . . Code.
>
> . . . .
>
> [The Court]: And that would be whether it [is] . . . failing to extend construction permits or failing to secure the property. . . . [T]he penalty section would be the same?
>
> [Cattell]: Yes.
>
> . . . .
>
> . . . There[ are] only four conditions where I can just immediately issue a penalty. And none of the things that [defendant] had . . . met that requirement. So I'm obligated to give them a Notice of Violation and Order to Terminate, and give them a reasonable amount of time to correct it. If they don't then I issue a penalty.

4

Regarding service of the violation notices, Cattell explained the first notice was sent to the P.O. Box on April 25, 2017, and the township "did not receive anything back from the post office telling us that it was either delivered or it was undelivered." The township received back the first notice sent to the property on the same date as undeliverable. He explained the violation notice he posted on the structure was stapled and read "Notice and Order of Penalty" and had a "big orange sticker" on it that said, "unsafe structure notice," and included the lot and block numbers, the address, and the date posted.

Cattell testified that typically, construction applicants submit one application for the entire building permit. However, because defendant only partially completed construction of the structure's exterior and left it exposed to the elements for over seven years, Cattell suggested she "apply for a separate permit to start the exterior work to get the exterior of the building . . . weatherproofed. Meanwhile, [the township] would do a plan review. [Then, s]he would submit a separate application for the interior work."

The township granted defendant the exterior permit on November 30, 2017. However, defendant submitted a "flawed" but "completed" application for the interior work, including "building, plumbing, electrical, and fire." The application for the interior work was subjected to a plan review. Cattell

5

explained the plan review process identifies "any items that do not comply with code" and produced a "correction list" for the permit applicant to address in order to obtain the permit.

The plan review for defendant's application revealed "building, plumbing, [and] electrical items that needed to be addressed" because there were "discrepancies between the plans that were submitted . . . and what was written on the applications." Cattell noted "[t]he fire [safety]" work defendant performed failed on January 5, 2018, "[a]nd the . . . building, plumbing, electric [work] had failed prior to that." Cattell testified he called defendant on February 1, 2018 to pick up the correction list, she returned the call on February 5, and picked up the correction list on February 11.

Cattel also testified he had a conversation with defendant on August 2, 2017, which led him to believe she was aware of the violations. He also went to the property to "do a checkup" because the notices posted on the structure "were removed from the structure by persons unknown, [so he] just stopped by to see if anything was being done." He testified defendant was present and had workers performing "maintenance work." After circling the structure, Cattell "noticed that the back of the house, the walkout basement was secured with plywood," and "[t]he fence was fixed in one section." Both items were the basis

of the violation notice for having an unsafe structure. Cattell testified defendant was on the property "to secure it, which led [him] to believe that she did get the Notice of the Unsafe Structure." He also "suggest[ed] to [defendant] that [she needed a permit] and . . . she said . . . she would follow-up on the expired permit." Cattell also noted he, defendant, and the township's assistant solicitor met to discuss the "status" of defendant's permit application.

The municipal court judge credited Cattell's testimony and concluded "it is clear . . . that there was service, there was proper notice, due process was satisfied, and that in fact [defendant] has violated the Administrative Code in terms of her requirements for having a building permit." Regarding the penalty, the State suggested the "most conservative" minimum calculation would be "the initial $2,000 violation" plus "[seventy-five] weeks thereafter" for a total of $152,000. The judge imposed $152,000 in fines plus costs, but suspended $100,000 for sixty days to enable defendant to come into compliance. The judge noted "if both parties are in agreement that . . . progress is being made in the right direction to get this where it needs to be, [the court would] . . . consider extending that [sixty] days."

Defendant appealed from the municipal court's decision. She argued the State's assertion she had not filed for a new permit was false because "there

A-1131-19

[was] an active application . . . in the works."  Contrary to the State's arguments she asserted "although [construction is] not completed, [the property] is anything but blighted.  It's going to be a mansion."  Regarding the ten year delay in completing the structure, defense counsel argued as follows:

> [N]ot of the record, but there are . . . innumerable factors, that have contributed to that.  It's . . . an inordinate amount of time, no question.  It's also a 20,000 square foot home that . . . was multi millions of dollars.
>
> . . . One of the many problems . . . is that because of . . . actions of township officials[,] the funding source, our [mortgage company,] has pulled back, has required additional information.  That . . . doesn't explain [ten] years.  But that's only one of about [ten] instances where we believe, sometimes because of [defendant], sometimes because of the township official, sometimes because of nature this property[,] the . . . building of this property has been extended.
>
> So . . . this is not sitting on their hands for [ten] years.  . . . [T]he exterior walls are up, not the exterior facade, but the walls are up, the floors, the sub-floors are there, much of the work has been done and there is an active permit process in place now.

Counsel explained defendant could not continue construction because the township issued a separate notice of violation for "doing work on a structure without a permit . . . ."

8

Defendant also challenged the service of process. She argued the Code permits posting on the structure only when there is a violation for an unsafe structure, not a violation for an expired permit as in her case. She also argued in order to provide proof of service by mail, the township had "to submit an affidavit of diligent inquiry . . . to prove that that was necessary" and they could not prove it was necessary because "[t]hey couldn't say [']we couldn't contact [defendant.'] They contacted her many times." Defendant acknowledged she did not provide the township her "real address where she was living," but argued there were

> multiple face-to-face [or telephone] contacts between [defendant] and the construction official . . . where the township, first of all, could have compelled her to provide her address[ or] . . . hand delivered her the personal service or told her about that. And the record is clear that that did not occur.

Defendant also argued the fine was unjust and excessive. She asserted the fines were miscalculated and should be reduced.

The Law Division judge concluded "the township provided . . . [d]efendant with proper service in accordance with N.J.A.C. 5:23-2.3." He found as follows:

> The process of service by an administrative agency is not subject to the court rules. Shannon v.

Acad. Lines, Inc., 346 N.J. Super. 191, 196 (App. Div. 2001). . . .

Statutory penalties recovered in civil proceedings "do not require proof beyond a reasonable doubt that the accused transgressed the law." In re P.H., 436 N.J. Super. 427, 438 (App. Div. 2014). [T]he State['s burden of proof is] . . . by a preponderance of the evidence. [Ibid.]

Defendants cannot benefit by taking active measure[s] to avoid service. Perry v. Brown, 272 N.J. Super. 572, 579 (Law Div. 1993). "If the person addressed with a notice of unsafe structure cannot be found within the municipality after diligent search, then such notice shall be sent by registered or certified mail to the last known address of such person . . . and a copy of the notice of unsafe structure shall be posted in a conspicuous place on the premises and such procedures shall be deemed equivalent of personal notice." N.J.A.C. 5:23-2.32. Effective service, not perfect service is in accordance with constitutional due process. Coryell v. Curry, 391 N.J. Super. 72, 81 (App. Div. 2006).

In this case, the township mailed the notices to the only addresses the [t]ownship had on file for the [d]efendant, to which the [d]efendant had provided. These notices were sent to both [d]efendant's P.O. Box address and the address of the home in dispute . . . . The regular mail copies were never returned, which would have indicated that delivery was incomplete and the recipient, in this case the defendant, was never notified. In addition, the [c]onstruction [o]fficial also posted the violations on [d]efendant's property. Defendant asserts that these forms are not proper and proper service would have been effectuated by hand delivery to the defendant. Although, as defendant points out, the

10

[c]onstruction [o]fficial may have had opportunities to hand deliver the notices to the defendant, under [N.J.A.C.] 5:23-2.32, he is not required to do so, therefore he cannot be penalized for not doing so.

[(emphasis in original)].

The judge credited Cattell's testimony finding it "credible and lucid, including the testimony that he made several efforts to serve the [d]efendant and spoke to the [d]efendant on numerous occasions. . . . Cattell also testified the [d]efendant took steps to comply with the notice of unsafe structure, indicating she received at least one set of summonses." The judge concluded the township met its burden to show service of process and rejected defendant's due process violation argument.

The Law Division judge also upheld the fines imposed on defendant. Citing N.J.S.A. 52:27D-138, he noted that under the Code the court had the discretion to impose fines where a person

"(l) Violates any of the provisions of this act or rules promulgated hereunder; (2) Constructs a structure or building in violation of a condition of a building permit; (3) Fails to comply with any order issued by an enforcing agency or the department; . . . ." Violators "[s]hall be subject to a penalty of not more than $2,000" when there was a "failure or refusal to comply . . . with the knowledge to comply . . . with the knowledge that it will endanger the life or safety of any person, in which case the penalty shall not exceed $2,000[] per violation; [F]ailure to obtain a required permit prior to

commencing construction or failure to comply with a stop construction order shall not exceed $2,000[] per violation."

The judge concluded the fines imposed on defendant were appropriate because she was subject to the $2,000 fine for "failing to renew an expired construction permit" and "$2,000 per week for every week of the violation, which is in accordance with the penalties allowed per [N.J.S.A.] 52:27D-138." However, the judge vacated the $100,000 suspended fine reasoning as follows:

> At the [m]unicipal [c]ourt . . . hearing, defense counsel argued that the defendant complied with the [m]unicipal [c]ourt's order to suspend $100,000 of the fines evidenced by defendant's resubmission of the application dated February 19, 2019. The [c]ourt had received documents from both parties on May 13, 2019 to clarify the efforts and progress made after the sentencing. It appears the defendant submitted another application for review within the [sixty] days allotted by the [m]unicipal [c]ourt, on February 19, 2019. Although the defendant's February 2019 application was rejected, as [the State] points out and the documents provided to the [c]ourt reveal, the [c]ourt feels that this was the step forward that the [m]unicipal [c]ourt sought when allowing the $100,000 to be suspended. Both parties submitted a second document revealing that the defendant made another attempt at the application, dated April 29, 2019. However this was also rejected. [Defense counsel] sen[t] the [c]ourt a third application dated May 8, 2019.
>
> The three application submissions . . . all demonstrate to the [c]ourt that the defendant is making

12

> an effort to comply with the [c]ourt's holding and remedy the situation. Therefore the $100,000 is lifted.

The judge reduced the fine to $52,000 plus $33 in court costs and entered judgment accordingly.

Defendant filed a motion for reconsideration. She argued the court should revisit the guilty finding because a separate emergent action brought by the township to demolish the structure alleging it was unsafe and lacked a building permit was denied and the Camden County Construction Board of Appeals had already found the property was safe in November 2018. Regarding the building permit, defendant alleged Cattell

> unequivocally stated on the record, as [defendant] did as well, that as of two days after the issuance of the summons for not having a building permit there were discussions. And since April . . . 2017 through . . . this week, . . . the litigants . . . have been engaged in continuing discussions for the issuance of a new building permit.

Defendant argued these negotiations were relevant to her attempts to remedy the violations. Further, she noted she has "the financial wherewithal and the strong desire to complete [the construction] as well."

Defendant also argued she should not have been fined $2,000 because the municipal court did not make the necessary finding that defendant knew the property was a risk to life and safety and knowingly put people at risk.

A-1131-19

Moreover, she noted the notice of violation she received stated she could be fined up to $1,000 per week not $2,000 as the court found.

The Law Division judge upheld the guilty finding, but granted reconsideration in part and reduced the fines. At the outset, he noted his decision inadvertently cited the wrong law and the applicable regulation was N.J.A.C. 5:23-2.31 for failure to have a building permit. The judge agreed the notice of violation stated the potential weekly fine was $1,000 not $2,000 and accordingly reduced the total fine to $76,000 representing the initial $1,000 fine plus the seventy-five weeks of violation at $1,000 per week. The judge further reduced the fine, reasoning as follows:

> And I also think in fairness in regards to my previous decision I am suspending $50,000 of that particular fine, realizing and finding that the amount that this defendant owes to Cherry Hill at this time is $26,000. I'm doing that based upon the fact [the municipal court judge] suspended basically two-thirds of what he originally found at that time only to get a permit, I in my discretion on the appeal didn't say that was just held off on the permit. I suspended it altogether [be]cause I just felt that that was excessive in that matter.

> Likewise in this matter I think that the fine is appropriate, but I am giving the benefit of the reasoning and deduction of a suspension by [the municipal court judge] and in my subsequent appeal[. Therefore], . . . I do think [defendant] owes $26,000.

14

Defendant raises the following points on this appeal:

> [POINT I:] THERE IS NOT SUFFICIENT CREDIBLE EVIDENCE PRESENT IN THE RECORD TO UPHOLD THE LAW DIVISION FINDINGS.
>
> A. THE LAW DIVISION DID NOT FIND PROOF BEYOND A REASONABLE DOUBT.
>
> B. THE TOWNSHIP DID NOT PROVE VALID SERVICE OF PROCESS.
>
> C. THE[RE] WAS INSUFFICIENT PROOF OF VIOLATION BY DEFENDANT.
>
> D. THE PENALTY SOUGHT BY THE TOWNSHIP AND IMPOSED ON DEFENDANT EXCEEDS THE ALLOWABLE FINE PERMITTED BY THE GOVERNING STATUTE AND REGULATION.

## II.

We review the Law Division's order to determine whether there is sufficient credible evidence in the record to support it. State v. Johnson, 42 N.J. 146, 162 (1964). "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999) (citing Midler v. Heinowitz,

15

10 N.J. 123, 128-29 (1952)).  "Appellate courts should defer to trial court's credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Cerefice, 335 N.J. Super. 374, 383 (App. Div. 2000) (citing Locurto, 157 N.J. at 474).

Where the Law Division has adjudicated a motion for reconsideration, we review the determination for an abuse of discretion.  Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).  However, our review of legal determinations is always plenary.  State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011).

### A.

We reject defendant's argument that the Law Division utilized the wrong standard of proof and should have adjudicated the State's proofs applying a beyond-the-reasonable-doubt standard.  The violation prosecuted here was a civil enforcement of an administrative penalty under the Code and the PEA.  "An action under the [PEA] . . . is civil in nature."  Goldman v. Critter Control of N.J., 454 N.J. Super. 418, 429 (App. Div. 2018) (second alteration in original) (quoting Dep't of Conservation v. Scipio, 88 N.J. Super. 315, 319 (App. Div. 1965)).  "[C]ivil proceedings to recover a statutory penalty do not require proof

16

beyond a reasonable doubt that the accused transgressed the law." P.H., 436 N.J. Super. at 438 (quoting Scipio, 88 N.J. Super. at 322). "In civil proceedings to recover a statutory penalty, the State satisfies the burden of proof placed upon it if it establishes defendant's violation by a preponderance of the evidence." Dep't of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407, 411 (App. Div. 1970).

B.

We also reject defendant's argument the township failed to effect valid service of process. Service of process under the Code is governed by N.J.A.C. 5:23-2.33, which permits service in manners "otherwise consistent with due process." N.J.A.C. 5:23-2.15(a)(1) mandates applicants provide an address "not . . . limited to a post office box, but shall specify a physical location where such owner or agent may be found during normal business hours." N.J.A.C. 5:23-2.32 permits service of process by posting where the notice is for an unsafe structure. Thus, personal service is not required, and as the Law Division judge noted, neither is perfect service.

We have held "certified mail, return receipt requested, is a mode of service meeting due process requirements." Shannon, 346 N.J. Super. at 197. In regard to service by regular mail, there is "a presumption that mail properly addressed,

17

stamped, and posted was received by the party to whom it was addressed," which is "rebuttable and may be overcome by evidence that the notice was never in fact received." SSI Med. Servs. v. HHS, Div. of Med. Assistance & Health Servs., 146 N.J. 614, 621, 625 (1996) (citations omitted).

Here, service of process was effectuated as permitted by the Code at the addresses defendant provided to the township. The regular mail was not returned. Also, the record supports the Law Division judge's finding defendant was served because defendant's subsequent remediation efforts and conversation with construction officials demonstrated she was aware of the violations.

C.

Contrary to defendant's arguments, we are convinced the township proved a violation. N.J.A.C. 5:23-2.16(f)(1)(ii) permits a construction official to revoke a permit if the project for which the permit was obtained is not completed by the third anniversary of the date of the issuance of the permit. The regulation further states:

> If a project is not completed by such date, the permit holder may apply to the enforcing agency for a one-year extension of time for completion of the project. The enforcing agency shall not unreasonably withhold approval of any such extension request. If the project is not completed within the time allowed, the enforcing agency shall take such action under the code as may be appropriate, including, without limitation, demolition

18

of the structure, in which case the legal authority of the jurisdiction shall institute appropriate action against the owner of the property for recovery of the costs incurred. The provisions of this subparagraph shall not apply to:

. . . .

(2) Any building in which all exterior work and all required site improvements have been completed . . . .

[Ibid.]

Defendant argues the township "did not prove . . . that there was not 'unreasonable withholding' of such approval requests or of extensions sought by the defendant." She also argues "[n]othing in the record addressed whether the exterior work and required site improvements had been completed at the property." She asserts because she continuously made new applications, which the township denied or required clarifications for, she complied with the Code and the failure to obtain a permit was due to the township's unreasonable actions.

At the outset, we note nothing in the record supports the argument the township acted unreasonably and either intentionally withheld granting plaintiff's permit or rejected her application for an illegitimate reason. According to the municipal court and Law Division judges, Cattell, the only witness to testify in this matter, gave credible testimony in all respects. We must defer to these credibility findings.

Cattell explained how defendant's permit had expired, and that defendant was in violation of N.J.A.C. 5:23-2.16(f)(1)(ii) because she failed to complete the exterior of the structure before the permit expired or obtain a new permit. Defendant failed to rebut Cattell's testimony and the State's proofs showing the exterior of the structure was comprised of insulation wrap, which had been left exposed to the elements and incomplete for several years.

Cattell also explained the process of the issuance of the violation notice and penalty to defendant pursuant to N.J.A.C. 5:23-2.31(e) for failure to comply. Defendant's argument that her application for a permit two years after the initial one expired complied with the Code lacks merit because the application was rejected as incomplete.

D.

Finally, defendant asserts the $26,000 is beyond the penalty permitted for violating N.J.A.C. 5:23-2.16(f)(1)(ii). She asserts the regulation does not permit a multiplication of the penalty amount because that is only permitted when the court finds defendant "failed to comply with any order issued by an enforcing agency or the department" pursuant to N.J.S.A. 52:27D-138(a)(3). She argues the Law Division judge did not find her guilty of N.J.S.A. 52:27D-138(a)(3) and

20

instead made the finding under N.J.A.C. 5:23-2.16(f)(1)(ii), which does not permit a penalty multiplier.

Defendant argues even if the penalty is permissible, we should not uphold it because it is disproportionate to the offense, unreasonable, and unfair. She asserts her conduct did not warrant the $26,000 penalty because she continually sought to address the township's demands and her failure to comply was not willful. We reject these arguments.

N.J.A.C. 5:23-2.31 states as follows:

> (a)  If the notice of violation and orders to terminate have not been complied with, the construction official in addition to any other available remedies likely to bring about compliance, may request the legal counsel of the municipality, . . . to institute the appropriate proceeding at law . . . to restrain, correct, or abate such violation or to require the removal or termination of the unlawful use of the building or structure in violation of the provisions of the regulations or of the order or direction made pursuant thereto.
>
> (b)  Penalties:
>
> > 1.  Any person . . . shall be subject to a penalty if that person:
> >
> > > i.  Violates any of the provisions of the act or the regulations;
> > >
> > > ii.  Constructs a structure or building in violation of a condition of a building permit;

iii. Fails to comply with any order issued by an enforcing agency or the department;

. . . .

3. With respect to (b)1iii above, a person shall be guilty of a separate offense for each day that he fails to comply with a stop construction order validly issued by an enforcing agency or the department and for each week that he fails to comply with any other order validly issued by an enforcing agency or the department. With respect to (b)1i . . . above, a person shall be guilty of a separate offense for each violation of any provision of the act or the regulations . . . . With respect to (b)1ii above, a person shall be guilty of a separate offense for each violation of conditions of a construction permit.

4. No such penalty shall be assessed except upon notice of violation and orders to terminate and upon the expiration of the time period delineated in the notice; . . . .

. . . .

(c) The construction official may assess a monetary penalty whenever such shall be likely to assist in bringing about compliance.

. . . .

(e) Penalties may be levied by an enforcing agency as follows:

1. Up to $1,000 per violation for failure or refusal to comply with any lawful order, unless the failure or refusal to comply is done with the knowledge that it will endanger the life or safety of any person, in which case the penalty shall be up to $2,000 per violation . . . .

Furthermore, N.J.S.A. 52:27D-138(e)(1) states:

A penalty for failure or refusal to comply with any lawful order shall not exceed $1,000[] per violation, unless the failure or refusal to comply is done with the knowledge that it will endanger the life or safety of any person, in which case the penalty shall not exceed $2,000[] per violation . . . .

As we noted, on reconsideration the trial judge cited N.J.A.C. 5:23-2.31 as the basis for the violation. He then noted the municipal court judge's findings under N.J.S.A. 52:27D-138(e) when he reduced and recalculated the penalty. We discern no error in the judge's findings. Weekly penalties are clearly permitted under N.J.A.C. 5:23-2.31 as is the $1,000 per violation. Defendant's failure to address the outside construction of the structure constituted the sort of ongoing violation envisioned by the aforementioned statute and regulations.

III.

Finally, contrary to defendant's argument, the Law Division judge considered defendant's efforts to comply with the township's orders and the fairness of the penalty when he twice reduced the penalty. As we noted, the

23

judge reduced the fines from $2,000 to $1,000 because the notice initially served on defendant indicated the fines could be up to $1,000. The seventy-five week multiplier was appropriate because it represented the length of time defendant was non-compliant. The judge noted he was further reducing the penalty to $26,000 "in fairness . . . ." We discern no reversible error in the calculation considering a higher penalty amount was possible under the facts and the applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1131-19